TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

DANIEL E. LUNGREN
Attorney General

|  |  |  |
|---|---|---|
| OPINION | : | No. 91-306 |
| of | : | |
| | : | September 26, 1991 |
| DANIEL E. LUNGREN | : | |
| Attorney General | : | |
| | : | |
| CLAYTON P. ROCHE | : | |
| Deputy Attorney General | : | |
| | : | |

THE HONORABLE WILLIAM H. IVERS, DIRECTOR, DEPARTMENT OF BOATING AND WATERWAYS, has requested an opinion on the following questions:

1. May a local agency prohibit personal watercraft on all navigable waters within its jurisdiction?

2. Is a local agency required to provide the Department of Boating and Waterways with a justification for a proposed ordinance or regulation relating to vessels?

CONCLUSIONS

1. A local agency may prohibit personal watercraft on all navigable waters within its jurisdiction if the use of personal watercraft is incompatible with one or more other public uses on such waters and the ban is nondiscriminatory as to personal watercraft.

2. A local agency is not required to provide the Department of Boating and Waterways with a justification for a proposed ordinance or regulation relating to vessels.

ANALYSIS

"Personal watercraft" are small vessels propelled by an inboard engine which powers a jet pump. Their characteristics vary from manufacturer to manufacturer. They may be designed for persons standing or sitting and are highly maneuverable, have a shallow draft, and cause less wake than the usual motorboat. They have no propeller to endanger swimmers and must avoid shallow water where vegetation could clog their jets. Personal watercraft are used for recreational purposes and increasingly by state and local law enforcement officials for patrol and rescue activities.

Personal watercraft are classified by the United States Coast Guard as "Class A Motorboats," that is, motorized vessels less than 16 feet in length. (46 C.F.R. § 24.10-17 (1990).) In 1988 the Coast Guard reported to Congress that personal watercraft were no "more or less dangerous to operate than most other small powerboats."

1.  Prohibition of Personal Watercraft

The first question presented for resolution is whether a local agency may completely ban the use of personal watercraft on all navigable waters within its jurisdiction. For our purposes "local agency" means a city, county, or a special district which has been given equivalent powers of regulation with respect to the use of navigable waters. (See Harb. & Nav. Code, § 660, subd. (a).)[1] We conclude that under narrowly drawn circumstances, such a prohibition would be valid.

Article XI, section 7 of the California Constitution grants cities and counties the power to "make . . . all local, police, sanitary, and other ordinances and regulations not in conflict with general laws." This constitutional grant of "police powers" to cities and counties is exercisable within their territorial jurisdictions and is as broad as that possessed by the Legislature, subject to being displaced by general laws. (*Birkenfeld* v. *City of Berkeley* (1976) 17 Cal.3d 129, 140.)

With respect to boating activities, section 268 provides that "[c]ounties or cities may adopt restrictions concerning the navigation and operation of vessels and water skis, aquaplanes, or similar devices subject to the provisions of subdivision (a) of Section 660 . . ." upon "all waters which are in fact navigable." Subdivision (a) of section 660 in turn provides:

> "The provisions of this chapter, and of other applicable laws of this state, shall govern the use, equipment, and all other matters relating thereto whenever any boat or vessel shall be used on the waters of this state, or when any activity regulated by this chapter shall take place thereon. Nothing in this chapter shall be construed to prevent the adoption of any ordinance, law, regulation or rule relating to vessels by any entity otherwise authorized by law to adopt such measures, including but not limited to any city, county, city and county, port authority, district or state agency; *provided, however, that such measures relating to boats or vessels shall pertain only to time-of-day restrictions, speed zones, special-use areas, and sanitation and pollution control*, the provisions of which are not in conflict with the provisions of this chapter or the regulations adopted by the department. Such measures shall be submitted to the department prior to adoption and at least 30 days prior to the effective date thereon." (Emphasis added.)[2]

It is to be noted that personal watercraft meet the definition of both a "boat" and a "vessel" for purposes of section 660. (See § 651.)

More significant for our purposes is the definition of "special use area" found in subdivision (u) of section 651. That subdivision provides: "`Special use area' means all or a portion

---

[1]All section references hereafter are to the Harbors and Navigation Code.

[2]The "department" is the Department of Boating and Waterways ("Department"). (§ 32.) Section 660 will be amended by chapter 126 of the Statutes of 1991; the amendments will not effect the conclusions reached herein.

of a waterway that is set aside for specified uses or activities to the exclusion of other incompatible uses or activities."[3]

No state law either prohibits or allows the complete ban of personal watercraft on navigable waters.[4] It is evident from the language of section 660 that a local agency could prohibit the use of personal watercraft with respect to the time of day or area of their use.[5] As to the area of use, the operation of personal watercraft must in fact be incompatible with one or more other public uses in the area. We believe that such a showing would also be subject to the following general principles: (1) under the guise of the police power, a local agency may not completely prohibit what is otherwise lawful, (2) it may not unreasonably discriminate between objects which are similarly situated under the law, and (3) restrictions placed upon the recreational use of navigable waters are not favored.

In 63 Ops.Cal.Atty.Gen. 874 (1980), we had occasion to apply section 660, concluding that a city could not adopt an ordinance requiring each boat owner to be covered by a liability insurance policy naming the city as an additional insured. In analyzing section 660 and other relevant statutes in relationship to the city's police powers, we noted:

> "The usual restrictions and limitations placed upon the exercise of [the state's] police powers would of course be applicable to a city's authority, ensuring that the `means employed to protect the public health, safety, and general welfare *are not arbitrary or discriminatory* and are reasonably designed to achieve protection of legitimate public interests [Citations].' (45 Ops.Cal.Atty.Gen. 122, 127 (1965).)" (*Id.*, at p. 875, emphasis added.)

Subsequently in 68 Ops.Cal.Atty.Gen. 268 (1985), we concluded that the Legislature could not prohibit public use of navigable waters on private property for the purposes of hunting waterfowl. We discussed at length the constitutional right of the people (Cal. Const., art. X, § 4) to use the navigable waters of the state for recreational and other purposes. We noted that "[i]n general the Legislature may not `divest the people of the State of their rights in navigable waters of the state.'" (*Id.*, at p. 272.) *A fortiori*, neither may a local agency.

Finally in 72 Ops.Cal.Atty.Gen 149 (1989), we addressed the application of section 660 to a city proposal requiring insurance of boat owners using navigable waters. In concluding that the plan would violate both the constitutional right of access to navigable waters and the regulatory grant of powers under section 660, we relied heavily upon the case of *People ex rel Younger* v. *County of El Dorado* (1979) 96 Cal.Ap.3d 403. In the *El Dorado* case the court invalidated a complete ban on boating on a 20 mile section of the American River, a navigable waterway. In concluding that the ban was an unreasonable exercise of the county's police powers, the court stated in the context of section 660:

---

[3]Subdivision (u) was enacted subsequent to our opinions in 45 Ops.Cal.Atty.Gen. 122 (1965) and 63 Ops.Cal.Atty.Gen. 874, 876 (1980) which suggested that a "special use area" must be limited to a portion of a waterway.

[4]Thus, for example, no ban could be justified on the basis that such watercraft are inherently dangerous to the operator.

[5]No indication has been given that personal watercraft would require regulation with respect to sanitation or pollution control.

"The ordinance is neither a permissible special-use area designation nor a reasonable sanitation and pollution control measure. On its face, it is an absolute prohibition against boating by the public. The record shows that the affected section of the river is not a significant fishing stream, and partly because of restricted access, fishing is light. Swimming in whitewater areas without such artificial means as life jackets is obviously neither popular nor safe. Thus the ordinance effectively bans virtually all public use of the river.

"However laudable its purpose, *the exercise of police power may not extend to total prohibition of activity not otherwise unlawful.* [Citations.] Courts are especially sensitive to infringements upon constitutional rights under the guise of exercise of police power. [Citation.] The public's right of access to navigable streams is a constitutional right. [Citations.]" (*Id.* at p. 406, emphasis added.)

In the recent case of *City of Redwood City* v. *Dalton Construction Co.* (1990) 221 Cal.App.3d 1570, 1573, the court drew the following distinction between a regulation and a prohibition:

". . . The distinction between a regulation and a prohibition is well understood in municipal law. [Citation.] The term `prohibit' means `[t]o forbid by law; to prevent; - not synonymous with "regulate."' [Citation.] The term `regulate' means `to adjust by rule, method, or established mode; to direct by rule or restriction; to subject something to governing principles of law. It does not include a power to suppress or prohibit [citation].' [Citation.]"

In light of the foregoing, we believe that a complete ban on the use of personal watercraft by a local agency would only be valid in limited instances. (See 45 Ops.Cal.Atty.Gen. 122, 126-127 (1965).)[6] The prohibition would be authorized if (1) the use of personal watercraft on *all* navigable waters under the agency's jurisdiction is incompatible with one or more other public uses and (2) such ban is neither arbitrary nor discriminatory as to personal watercraft, e.g., the ban applies to other incompatible motorized vessels as well.

2. Justification For Proposed Regulations

The second question presented is whether a local agency is required to provide the Department with a justification for a proposed ordinance or regulation relating to vessels. The question arises by virtue of the following sentence of subdivision (a) of section 660, previously quoted: "Such measures shall be submitted to the department prior to adoption and at least 30 days prior to the effective date thereof."

We see nothing in the language of the statute which *requires* a local agency to justify a proposed regulation. In 45 Ops.Cal.Atty.Gen. 122 (1965), we concluded that any adverse comments or recommendations made by the Division of Small Craft Harbors, the Department's predecessor (§ 50), pursuant to section 660 "are solely for the advice and information of the [local agency] in consideration of its proposed action." (*Id.*, at p. 126.) We analyzed the reasons for notifying the Department as follows:

---

[6]In our 1965 opinion, we discussed whether a county could ban motorboats on a limited area of the American River in favor of "non-powered" recreational uses, such as, swimming, wading, fishing, canoeing, and skindiving. Environmental and physical considerations indicated that the area was not safe or well-suited for motorboats.

"[Section 660] neither requires nor contemplates any recommendation by the division for or against the adoption of ordinances thereunder (cf. Ed. Code § 15005) nor does it provide or imply that the validity or enforcement of such ordinances would in any way be impaired by any adverse comment by the division as to ordinances submitted to it. *Cf. Gogerty* v. *Coachella Valley Junior College Dist.*, 57 Cal.2d 727 (1962). In fact, the provision that such ordinances be submitted to the division `at least 30 days prior to the effective date thereof' strongly suggests that such ordinances may be adopted and go into effect subsequent to its being submitted irrespective as to what the division's comments may be.

"The purpose of the provision requiring submission of local ordinances to the division prior to the dates of their adoption and going into effect appears to furnish a means by which the division, and through it the Small Craft Harbors Commission as well as the Department of Parks and Recreation (see § 662), may be informed of pending local legislation in the field of boating in sufficient time for these agencies to take appropriate action.

"The Legislature has conferred broad responsibilities on the Small Craft Harbors Commission and its administrative arm, the Division of Small Craft Harbors, in implementing by rules and regulations statutes regulating equipment and operation of vessels in this State. §§ 652, 659, 660, and 669. This authority is subject to the policy limits of section 650 `. . . to promote safety for persons and property in and connected with the operation and equipment of vessels and to promote conformity of laws relating thereto.' It is reasonable that to enable these state agencies to effectively carry out this authority and policy, the Legislature should afford a means by which they may be advised of pending local legislation.

"Action by these state agencies on such proposed legislation may consist of calling the local agency's attention to conflicting state or federal measures which may invalidate the local ordinance. It may constitute advice, as in the present case, as to considerations of reasonableness or policy which because of the division's expertise on the subject of boating regulation it may wish to pass along for further consideration by the local governmental body. The commission may deem the matter of such general importance that it may wish to take immediate steps, act within its own authority to adopt statewide regulation on the subject, or refer the matter for appropriate legislative action. Where lack of uniformity of regulation would result as between two or more local governmental bodies as to the same body of water, the commission may take action for adoption of regulations under subdivision (b) of section 660. Adoption by the commission of a regulation, or enactment by the Legislature of a statute, creating a conflict with the ordinance would, of course, supersede and invalidate the local measure. *Pipoly* v. *Benson*, 20 Cal.2d 366 (1942). Local emergency measures adopted in view of disaster or public calamity may require special attention under subdivision (c) of section 660, which expressly requires division authorization for such emergency regulations to be given effect for longer than sixty days." (*Id.*, at p. 125.)

In answer to the second question, therefore, we conclude that while a local agency must provide the Department with notification of the terms and conditions of a proposed ordinance or regulation relating to vessels pursuant to section 660, it is not required to furnish a justification for the ordinance or regulation.

\* \* \* \*